**NORTHAMPTON MEDIA ASSOCIATES,
Appellant,**

v.

**FEDERAL COMMUNICATIONS
COMMISSION, Appellee,**

Cutter Broadcasting, Inc., Intervenor.

No. 90–1291.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 7, 1991.

Decided July 12, 1991.

Rehearing Denied Sept. 24, 1991.

William J. Byrnes, with whom Michael H. Bader and Richard M. Riehl were on the brief, Washington, D.C., for appellant.

Gregory M. Christopher, Counsel, Federal Communications Commission (F.C.C.), with whom Robert L. Pettit, Gen. Counsel, F.C.C., and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., were on the brief, Washington, D.C., for appellee. Sue Ann Preskill, Counsel, F.C.C., Washington, D.C., also entered an appearance for appellee.

John R. Feore, Jr., was on the brief, Washington, D.C., for intervenor.

Before WALD, BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Northampton Media Associates ("NMA") asserts that the Federal Communications Commission should have rejected Cutter Broadcasting, Inc.'s application for a broadcast station construction permit because Cutter did not have documentation on hand to support its certification that it was financially qualified. The FCC replies that under the procedures then in effect, prior documentation was not required. Although the Commission failed to explain its departure from FCC precedents that support NMA's position, we affirm because Cutter had reasonable and reliable evidence that funds would be available at the time of certification.

## I. BACKGROUND

This appeal involves mutually exclusive applications by NMA and Cutter for a permit to construct a new FM radio station in Northampton, Massachusetts. In moving to enlarge the issues to be considered in comparative hearings, NMA contended that Cutter's certification of financial qualifications was defective. NMA also claimed that Cutter did not have the requisite assurance of a transmitter site. Because NMA waived the latter claim by failing to raise it before the Commission, we address only NMA's challenge to the financial certification. *Cf. Rogers Radio Communications Services, Inc. v. FCC,* 751 F.2d 408, 413 n. 14 (D.C.Cir.1985) (petitioner must "raise each and every claim before the

Commission in order to preserve the issue for appeal").

Cutter attested to its financial qualifications by checking the "Yes" box adjoining each of the following statements in the 1981 version of FCC Form 301:

1. The applicant certifies that sufficient net liquid assets are on hand or are available from committed sources to construct and operate the requested facilities for three months without revenue.

2. The applicant certifies that:

   . . . .

   (c) it has determined that a reasonable assurance exists that all such sources . . . have sufficient net liquid assets to meet these commitments.

Joint Appendix 219. The relevant instruction reads as follows:

Documentation supporting the attestation of financial qualification need not be submitted with this application but must be available to the Commission upon request.

*Id.* at 222.

Eric W. Reid, a twenty-percent owner of Cutter, prepared the application without having documented the resources of the majority shareholders, Bruce and Carol Cutting, who had undertaken to supply the approximately $40,000 required for the project. NMA argued that certification without documentation is, perforce, misrepresentation.

The administrative law judge ("ALJ"), the Review Board, and the Commission all ruled that Cutter was financially qualified, that its lack of contemporaneous documentation was not fatal, and that it deserved the permit on the merits. *Northampton Media Assocs.*, 3 F.C.C. Rcd. 570 (1988) ("ALJ Decision"), *aff'd,* 3 F.C.C.Rcd. 5164 (Rev.Bd.1988) ("Rev.Bd. Decision"), *rev. denied,* 4 F.C.C.Rcd. 5517 (1989) ("FCC Decision"). They disagreed on one issue. The ALJ and the Review Board held that applicants must ordinarily document their resources before applying, but that an exception existed for applicants, like Cutter, that had "other reasonable and reliable evidence that funds would be available." Rev.Bd.

Decision, 3 F.C.C.Rcd. at 5167 (emphasis omitted); *see also* ALJ Decision, 3 F.C.C.Rcd. at 579–80. In contrast, the Commission held that documentation need only be prepared in response to a request by the agency. *See* FCC Decision, 4 F.C.C.Rcd. at 5518–19.

NMA and the FCC's Mass Media Bureau both petitioned for rehearing; the first on the grounds already noted, and the second on the basis that the FCC should limit the scope of its ruling to applicants who rely solely on the resources of their principals. Mass Media Bureau's Petition for Reconsideration, Aug. 14, 1989, at 5 ("Bureau Petition"). The Commission denied the petitions. *Northampton Media Assocs.*, 5 F.C.C.Rcd. 3075 (1990) ("Rehearing Denial"). This appeal followed.

## II. DISCUSSION

### A. Pre-application Documentation

The Commission's documentation requirements have passed through three phases. Until 1981, Form 301 required that applicants submit documentation with their applications. The 1981 revision dropped the submission requirement, *see Revision of Form 301*, 50 Rad.Reg.2d 381, 382 (1981); whether applicants still had to prepare documentation prior to submission is the question before us. The 1989 revision specifically requires applicants to prepare documentation before applying for a permit, but does not require its submission. *See Revision of Application for Constr. Permit*, 4 F.C.C.Rcd. 3853, 3859 (1989). The 1981 rule governs applicants, including Cutter, that filed between 1981 and 1989.

The FCC asserts, in its decision, that under the 1981 requirements governing certification cases like the one before us, reasonable assurance does not necessarily require that an applicant have the written documentation . . . when it certifies its financial qualifications. Although the supporting documentation must be produced upon the Commission's request, the applicant may prepare and submit it after certification, provided that the applicant actually had a reason-

able assurance of adequate funds at the time of certification. FCC Decision, 4 F.C.C.Rcd. at 5519. In support of this position, the decision notes that in *Certification of Financial Qualifications*, 2 F.C.C.Rcd. 2122 (1987), the Commission explained that "the certification procedure was designed to 'spare[ ] [applicants] the time and effort necessary *to prepare* and submit the documentation previously required to demonstrate their qualifications.'" FCC Decision, 4 F.C.C.Rcd. at 5518 (emphasis added) (quoting 2 F.C.C.Rcd. at 2122).

NMA responds by citing the Review Board's decision in *Las Americas Communications, Inc.*, 1 F.C.C.Rcd. 786, 788 (Rev. Bd.1986), which states:

> the *sine qua non* for financial qualifications under prior case precedent and the new certification procedure *is written documentation....* [The 1981 Form 301] *continues to require written documentation* to support "reasonable assurance" of funds. *The only change is that now the documentation need not be submitted* in the application process unless requested by the Commission.... [W]here individuals are providing funds, they must ... support their undertakings with balance sheets or financial statements.

(emphasis altered) (citation omitted). Moreover, *Las Americas* was not unique in this respect. *See Pepper Schultz*, 4 F.C.C.Rcd. 6393, 6399 (Rev.Bd.1989) (noting that Review Board, prior to FCC's *Northampton Media* decision, had "consistently interpreted" 1981 form as "presupposing that the requisite financial documentation actually existed"), *rev. denied*, 5 F.C.C.Rcd. 3273 (1990); *JAM Communications, Inc.*, 4 F.C.C.Rcd. 3754, 3757 (Rev. Bd.1989) (stating that applicants must have "documentation at hand" when applying). These last two cases issued after *Certification of Financial Qualifications*, which the FCC cited in support of its contention that prior documentation was not required.

It was on the strength of the *Las Americas* precedent that the Review Board concluded that Cutter was in technical viola-

tion of the Commission's certification policy, *see* Rev.Bd. Decision, 3 F.C.C.Rcd. at 5167, and that the Mass Media Bureau urged reconsideration so that the Commission might narrow the scope of its apparent departure "from the widely accepted and long established standard restated in *Las Americas.*" Bureau Petition at 5. Nevertheless, the FCC's decision ignored this contrary holding, and the order denying reconsideration dismissed it with the observation that "the contemporaneous documentation rule of *Las Americas* was inconsistent" with the 1981 revision. Rehearing Denial, 5 F.C.C.Rcd. at 3075. While the FCC acknowledged in a subsequent case that *Las Americas* "was effectively overruled by *Northampton Media Associates*," *Port Huron Family Radio, Inc.*, 5 F.C.C.Rcd. 4562, 4563 n. 4 (1990), this does not meet the Commission's basic obligation to provide a reasoned explanation for its change in practice. *See Office of Communication of United Church of Christ v. FCC*, 911 F.2d 803, 809 (D.C.Cir.1990); *Alegria I, Inc. v. FCC*, 905 F.2d 471, 474–75 (D.C.Cir.1990).

It is true, of course, that *Las Americas* and its progeny were decisions of the Review Board, not of the Commission. In its sphere, however, the Board has been delegated "all the jurisdiction, powers, and authority conferred by law upon the Commission," and the Board's actions "have the same force and effect ... as actions of the Commission." 47 C.F.R. § 0.203 (1990); *see id.* §§ 0.161, 0.361–0.367. In tracking agency policy, we have relied on Board decisions as well as those of the Commission. *See Ventura Broadcasting Co. v. FCC*, 765 F.2d 184, 191–93 (D.C.Cir.1985) (remanding where Commission failed to explain its departure from Review Board precedent); *West Michigan Broadcasting Co. v. FCC*, 735 F.2d 601, 611 (D.C.Cir. 1984) (declaring that Commission, by following Review Board precedent, "refutes [petitioner's] assertion that its action was in conflict with prior precedent"), *cert. denied*, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 782 (1985). Although we recently suggested, in dicta, that the FCC might disregard the decisions of another subor-

dinate entity, the Mass Media Bureau, the two Bureau decisions that were offered as contrary authority in that case were issued after the Commission had acted; the Commission could hardly be faulted for ignoring "precedents" that did not precede. *See Amor Family Broadcasting Group v. FCC,* 918 F.2d 960, 962 (D.C.Cir.1990).

Even though the Commission had an obligation to note and explain its divergence from *Las Americas,* we do not remand. As the Review Board pointed out, *Las Americas* admits of an exception. The Commission has "declined to disqualify an applicant lacking documentation when affixing its certification if there was other reasonable and reliable evidence that funds would be available." Rev.Bd. Decision, 3 F.C.C.Rcd. at 5167 (emphasis omitted) (citing *Armando Garcia,* 3 F.C.C.Rcd. 1065, 1067 (Rev.Bd.1988), *rev. denied,* 3 F.C.C.Rcd. 4767 (1988)). As the Commission concluded that Cutter had such evidence, and as this conclusion is amply supported (*see* part B below), Cutter's application would survive challenge under either view of the 1981 certification requirements. We see no reason, therefore, to remand the case. *See D.C.Fed. of Civic Ass'ns v. Volpe,* 459 F.2d 1231, 1247 n. 84 (D.C.Cir.) (remand is unnecessary where agency on remand would "inevitably arrive at the same result"), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972).

## B. Cutter's Financial Qualifications

NMA also contends that even if prior documentation is not required, the FCC erred in holding that there was reasonable assurance of Cutter's financial qualifications at the time of certification. The Commission found that the Cuttings reviewed their resources before applying and decided that they could meet the $38,836 in estimated expenses; that a subsequently prepared, retrospective financial statement showed that they had net liquid assets of $70,000 and a net worth of over $615,000 at the time of application; that Reid, who had been a long-time friend of the Cuttings and knew their standing in the community, was confident that adequate resources were available when he executed Form 301; and that the Cuttings examined and "effectively ratified" the form before it was submitted. FCC Decision, 4 F.C.C.Rcd. at 5517–18.

The Commission demands only "reasonable assurance" of an applicant's financial qualification. *See Revision of Application for Constr. Permit,* 4 F.C.C.Rcd. at 3859. The Commission, the Review Board, and the ALJ all agree that the Cutter certification met that standard, and we see no basis for challenging that conclusion.

### III. CONCLUSION

As, at the time of certification, Cutter had reasonable and reliable evidence that the necessary funds would be available, the FCC's licensing decision is

*Affirmed.*