**Heidi DAMSKY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Homewood Radio Co. LLC, Intervenor.**

**No. 99–1018.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1999.

Decided Jan. 7, 2000.

Lauren A. Colby argued the cause and filed the briefs for appellant.

Pamela L. Smith, Counsel, Federal Communications Commission, argued the cause for appellee. On the brief were Christopher J. Wright, General Counsel, Daniel M. Armstrong, Associate General Counsel, and Gregory M. Christopher, Counsel.

Stephen Diaz Gavin and Janet Fitzpatrick were on the brief for intervenor.

Before: WILLIAMS, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Heidi Damsky appeals from an order of the Federal Communications Commission ("FCC" or "Commission") finding her financially unqualified to receive an FM station construction permit and finding that an applicant that subsequently obtained the permit as part of a settlement agreement did not make disqualifying misrepresentations to the Commission. Damsky also argues that an intervening change in law entitled her to participate in an auction for the already-issued permit. Upon review of the relevant law and the record, we hold that the Commission did not err in affirming the Administrative Law Judge's financial qualification findings. We also hold that Damsky is not entitled to an auction because the Commission adequately explained why the statutory settlement provisions and Commission policy permitted the negotiated outcome obtained here. Therefore, we affirm the Commission's decision based on the aforementioned considerations and do not need to reach the misrepresentation issue raised by Damsky.

## I. Background

In 1988, Heidi Damsky, the appellant, and twelve other applicants filed mutually exclusive applications for a permit to construct a new FM broadcast station in Homewood, Alabama. The Mass Media Bureau designated all applications for comparative hearing. As a result of a 1992 hearing, an Administrative Law Judge found that Damsky failed to establish her financial qualifications and dismissed her application. *See In re Heidi Damsky*, 7 F.C.C.R. 5244 ¶¶ 180–83 (1992) ("Initial Decision"). The Commission affirmed the ALJ's determination. *See In re Heidi Damsky*, 13 F.C.C.R. 11688

¶¶ 24–32 (1998) ("Memorandum Opinion and Order").

By the time of the 1992 hearing, the applicant pool had narrowed to include Damsky and two others. The two remaining applicants, WEDA, Ltd. ("WEDA") and Homewood Partners, Inc. ("HPI"), entered into a settlement agreement contingent on Damsky's disqualification. Upon affirming Damsky's disqualification, the Commission granted the permit to the resulting entity, intervenor Homewood Radio Company ("Homewood Radio"). *See Memorandum Opinion and Order,* 13 F.C.C.R. 11688 ¶¶ 4, 7, 24–32. In addition to affirming the ALJ's financial disqualification findings, the Commission addressed two other challenges now properly raised and argued by Damsky on appeal. First, the Commission rejected Damsky's claim that HPI had made disqualifying misrepresentations to the Commission. *See id.* ¶¶ 12–23. Second, the Commission rejected Damsky's claim that a recent Commission order required it to award the permit through a competitive auction in which Damsky could participate. *See In re Heidi Damsky,* 14 F.C.C.R. 370 ¶¶ 9–14 (1999) ("Further Petition for Reconsideration"); *see also In re Heidi Damsky,* 13 F.C.C.R. 16352 (1998) ("Petition for Reconsideration").

## A. Background on Financial Qualifications

At the time the parties filed their applications, the Commission resolved competing applications though an evidentiary hearing process that assessed applicants' basic and comparative qualifications. Each broadcast applicant had to establish, among other things, that it was financially qualified to cover certain construction and operating costs. *See* 47 U.S.C. § 308(b) (1994); *CHM Broad. Ltd. Partnership v. FCC,* 24 F.3d 1453, 1455 (D.C.Cir.1994). The financial qualification form in effect when the parties here made their filings required each applicant to certify with "reasonable assurance" that it had net liquid assets on hand or had funding obtainable from committed sources sufficient to construct and operate the requested facilities for three months without revenues. *See In re Revision of Application for Construction Permit for Commercial Broadcast Station (FCC Form 301),* 50 Rad. Reg.2d 381 (P & F) (1981) ("Form 301"). The form clearly indicated that an applicant had to be prepared to document certification compliance upon request. *See id.* If the Commission questioned an applicant's financial qualifications, the applicant had to demonstrate its "reasonable assurance" by showing that, "prior to certification, it engaged in serious and reasonable efforts to ascertain predictable construction and operation costs" and that it confirmed the availability of net liquid assets, either on hand or from committed sources, sufficient to construct and operate the station for three months without revenue. *In re Northampton Media Assocs.,* 4 F.C.C.R. 5517 ¶¶ 13–15 (1989), *aff'd sub nom. Northampton Media Assocs. v. FCC,* 941 F.2d 1214, 1217 (D.C.Cir.1991). After questioning and investigating Damsky's financial qualifications, the ALJ found that Damsky failed to make either of the two showings required to establish a "reasonable assurance."

Specifically, the ALJ found that Damsky failed to show prior to the certification that she engaged in "serious and reasonable efforts" to formulate cost figures because she only offered a general $300,000 "ballpark" cost estimate based on a conversation with her consulting engineer. *See Initial Decision,* 7 F.C.C.R. 5244 ¶¶ 6–9, 181. The Commission affirmed the ALJ's findings and conclusions. *See Memorandum Opinion and Order,* 13 F.C.C.R. 11688 ¶¶ 1, 30. Likewise, the ALJ and Commission both agreed that Damsky failed to show that she had sufficient committed funding available since she based her financial backing on a casual assurance from her husband that the couple had the assets to cover the $300,000 project. *See Initial Decision,* 7 F.C.C.R. 5244 ¶¶ 10–24,

182–83; *Memorandum Opinion and Order,* 13 F.C.C.R. 11688 ¶ 31. The ALJ and Commission found that while the record showed that Damsky's husband preferred to obtain a loan rather than liquidate, neither Damsky nor her husband provided any assurance about the availability of such a loan contemporaneous with the certification. *See Initial Decision,* 7 F.C.C.R. 5244 ¶¶ 182–83; *Memorandum Opinion and Order,* 13 F.C.C.R. 11688 ¶ 32.

### B. Challenge with Regard to HPI

In the order affirming Damsky's disqualification, the Commission also accepted the Homewood Radio settlement agreement. Throughout the permit application process, Damsky challenged the corporate structure of HPI, one of the settling parties, as violating FCC rules and alleged that HPI had made various disqualifying misrepresentations to the FCC. The resulting inquiry primarily focused on whether two of the five HPI principals impermissibly acquired their ownership interests prior to the filing of HPI's amended application. Two checks formed the heart of the debate. Apparently, two "investors" gave the three original partners two $1200 checks marked respectively "20% Interest Radio" and "Ownership 20% of Homewood Partners." The agency inquiry focused on whether the checks constituted an ownership interest or a loan. Although conflicting documentary evidence existed, the ALJ evaluated all of the evidence and resolved the issue in HPI's favor by deeming the payments loans. *See In re Heidi Damsky,* 9 F.C.C.R. 4011 ¶¶ 61–68 (1994) ("Supplementary Initial Decision"). The Commission affirmed the ALJ's findings. *See Memorandum Opinion and Order,* 13 F.C.C.R. 11688 ¶¶ 13–23.

### C. Background on Auction Provisions

While exceptions to the ALJ's decision were pending, this court held in *Bechtel v. FCC,* 10 F.3d 875 (D.C.Cir.1993), that the "integration of ownership with management" criteria used in FCC comparative hearings was arbitrary and capricious and therefore unlawful. *See id.* at 878. In response to *Bechtel,* the Commission froze all ongoing comparative cases, including this case, pending the development of a new regulatory structure. *See Memorandum Opinion and Order,* 13 F.C.C.R. 11688 ¶ 3. However, the Commission also created an exception to the freeze policy. The exception allowed a frozen case to be adjudicated to completion if the parties to the comparative proceeding reached a settlement agreement even if the settlement were contingent on the resolution of specific basic qualifying issues. *See Modification of FCC Comparative Proceedings Freeze Policy,* 9 F.C.C.R. 6689 (1994). The agreement resulting in Homewood Radio's receipt of the construction permit constituted such a settlement.

However, while the parties here were negotiating for settlement, Congress amended § 309(j) of the Communications Act to require the Commission to grant construction permits through a competitive bidding system. *See* 47 U.S.C. § 309(j) (Supp. III 1997). Since the mandatory competitive bidding system applied to applications filed after July 1, 1997, newly enacted § 309(*l*) covered the applications filed in this case because the filings occurred before July 1, 1997. Subsection 309(*l*)(1) states that the Commission "shall ... have the authority" to resolve the pre-July 1, 1997 filings through competitive bidding. In addition, subsection 309(*l*)(3) required the Commission to "waive any provisions of its regulations necessary to permit such persons to enter an agreement to procure the removal of a conflict between their applications during the 180–day period beginning on the date of August 15, 1997." Here, the settlement agreement fell within the 180–day window.

Subsequent to the Commission's approval of the Homewood Radio settlement agreement but prior to the Commission's denial of Damsky's Petition for Reconsideration, the Commission adopted rules to

implement its new auction authority. In an order, the Commission announced its decision to resolve the pre-July 1, 1997 filings by auction because "auctions will generally be fairer and more expeditious than deciding [the pre-July 1, 1997 filings] through the comparative hearing process." *In re Implementation of Section 309(j) of the Communications Act,* 13 F.C.C.R. 15920 ¶ 34 (1998) (*"Auction Order"*). In response to the *Auction Order,* Damsky sought further administrative remedy and asserted that the *Auction Order* required the Commission to hold an auction for the Homewood Radio permit. Specifically, Damsky relied upon paragraph 89 of the *Auction Order* which stated:

> Where the Commission has denied or dismissed an application and such denial or dismissal has become final (*e.g.,* when an applicant failed to seek further administrative or judicial review of that ruling), such an entity is not entitled to participate in the auction. Among those remaining in the proceeding, we will permit all pending applicants to participate in the auction, without regard to any unresolved hearing issues . . . as to the basic qualifications of a particular applicant.

*Id.* ¶ 89. Thus, Damsky argued that the intervening *Auction Order* entitled her to participate in an auction for the permit because the original order disqualifying her was still under review and the "new" auction system allowed her to participate despite any unresolved qualification issues. The Commission rejected her claim because the settling parties reached an agreement in accordance with § 309(*l*) of the amended statute, the provision ordering the Commission to waive its rules and policies when necessary to permit 180–day window applicants to enter into settlement agreements, and because paragraph 89 did not address cases involving settlements filed within the 180–day waiver period which were thereafter approved contingent upon the Commission resolving specified basic qualification issues. *See Further Petition for Reconsideration,* 14 F.C.C.R.

370 ¶¶ 9–13; *see also In re Implementation of Section 309(j) of the Communications Act,* 14 F.C.C.R. 8724 ¶ 18 (1999).

On appeal, Damsky challenges the Commission's adverse financial qualification determination resulting in the dismissal of her application, the Commission's determination that HPI did not make disqualifying misrepresentations, and the Commission's approval of the Homewood Radio settlement agreement in lieu of an auction.

## II. Discussion

### A. Scope of Review

■ As an initial matter, we must establish the extent of our review since the FCC challenges the sufficiency of Damsky's notice concerning the issues she currently argues on appeal. With regard to the auction issue, we hold that Damsky properly raised that issue in her Notice of Appeal ("Notice") by expressly appealing the order denying further reconsideration in which the Commission first addressed the auction provisions in dispute. *See Further Petition for Reconsideration,* 14 F.C.C.R. 370 ¶¶ 9–13. Although "a petition seeking review of an agency's decision not to reopen a proceeding is not reviewable unless the petition is based upon new evidence or changed circumstances," *Southwestern Bell Telephone Co. v. FCC,* 180 F.3d 307, 311 (D.C.Cir.1999), the FCC concedes and we agree that the auction issue pertains to changed circumstances in the law and is therefore reviewable by this court.

■ The sufficiency of notice concerning the financial qualification and misrepresentation issues requires a more extended discussion. In *Southwestern Bell,* we held that when an agency has denied the reconsideration of a substantive underlying decision and a party appeals only the order denying reconsideration, the appeal does not suffice to bring the earlier substantive decision's merits before the court. *See Southwestern Bell,* 180 F.3d at 309. The

FCC argues that Damsky sought review only of the Commission orders denying her reconsideration and further reconsideration. Therefore, the FCC asserts, Damsky cannot raise the financial qualification or misrepresentation issues on appeal since the Commission only substantively addressed those issues in the unchallenged underlying *Memorandum Opinion and Order*. However, for the reasons set forth below, we reject the FCC's argument and hold that Damsky made sufficient references to the underlying substantive *Memorandum Opinion and Order* in her Notice of Appeal and accompanying Concise Statement of Reasons to put the Commission on notice that she intended to challenge the financial qualification and misrepresentation issues in addition to the auction issue.

On the face of her Notice of Appeal, Damsky clearly states that she is appealing the Commission order denying further reconsideration. However, the Notice also references the order denying reconsideration and the underlying *Memorandum Opinion and Order*. Moreover, Damsky briefly addresses the merits of the *Memorandum Opinion and Order* in the Concise Statement of Reasons attached to the Notice. Given the ambiguity surrounding the existence of actual notice, we analyze Damsky's notice predicament under the "test for determining whether a filing that names one order suffices to bring a different order before the court" set out in *Southwestern Bell*, 180 F.3d at 313.

■ To determine whether an applicant sufficiently raised an order or an issue contained in a particular order, we first examine the notice to see whether it contains "the specification of [other] orders and hearing dates [or] fail[ed] to mention the [disputed] order in either the notice of appeal or the docketing statement" and also review other relevant filing information. *Brookens v. White*, 795 F.2d 178, 181 (D.C.Cir.1986) (per curiam). We then use the results of this examination to infer the petitioner's intent and decide if the respon-

dent has been misled by the filings. *See Brookens*, 795 F.2d at 181; *see also Southwestern Bell*, 180 F.3d at 313. Here, Damsky, in passing, cited to the order dealing with her disqualification and the HPI misrepresentation issues in her Notice of Appeal. However, she also substantively challenged the Commission's denial of her application on financial qualification grounds and its dismissal of the misrepresentation issue in the Concise Statement of Reasons attached to her Notice of Appeal. Thus, the Commission cannot claim that any notice defects surprised or misled it with regard to the issues Damsky intended to raise on appeal. Given the circumstances, we conclude that Damsky adequately brought the *Memorandum Opinion and Order* before this court for review. Therefore, we will address both the financial qualification issue analyzed in the *Memorandum Opinion and Order* and the auction issue analyzed in the order denying further reconsideration. For the reasons set forth below, we do not reach the misrepresentation issue.

### B. Financial Qualifications

■ We review FCC orders "under the deferential standard mandated by section 706 of the Administrative Procedure Act, which provides that a court must uphold the Commission's decision unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Achernar Broad. Co. v. FCC*, 62 F.3d 1441, 1445 (D.C.Cir.1995) (quoting 5 U.S.C. § 706(2)(A)). In this task, we "do not 'substitute [our] judgment for that of the agency' [but] [r]ather we look to see 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 178 (D.C.Cir.1997) (quoting *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). We also review the FCC's factual findings for support by substantial evi-

dence. *See, e.g., Millar v. FCC,* 707 F.2d 1530, 1540 (D.C.Cir.1983). Given the relevant standards of review, we hold that the Commission did not act arbitrarily in affirming the ALJ's finding Damsky financially disqualified since the law and substantial evidence in the record support the ALJ and Commission's decisions regarding Damsky's failure to substantiate her financial qualification. More specifically, we hold that the Commission's conclusion that Damsky did not certify funding with a "reasonable assurance" because she did not engage in "serious and reasonable efforts" to obtain construction and operating cost figures is not arbitrary or capricious.

In *In re Northampton Media Assocs.,* 4 F.C.C.R. 5517 (1989), *aff'd sub nom. Northampton Media Assocs. v. FCC,* 941 F.2d 1214 (D.C.Cir.1991), the Commission provided some guidance regarding "reasonable assurance" in the certification context:

> [T]he certification procedure was designed "to spare[ ] [applicants] the time and effort necessary *to prepare* and submit the documentation previously required to demonstrate their qualifications." . . . [R]easonable assurance does not necessarily require that an applicant have the written documentation [previously required] when it certifies its financial qualifications. Although the supporting documentation must be produced upon the Commission's request, the applicant may prepare and submit it after certification, provided that the applicant actually had a reasonable assurance of adequate funds at the time of certification.

*Id.* ¶ 14 (quoting *In re Certification of Financial Qualifications by Applicants for Broadcast Station Construction Permits,* 2 F.C.C.R. 2122 (1987) (emphasis added)). Specifically, the law required Damsky to establish, upon request, two precertification inquiries in order to demonstrate "reasonable assurance." First, she had to "adduce probative evidence that, prior to certification, [she] engaged in

serious and reasonable efforts to ascertain predictable construction and operation costs." *Id.* ¶ 15; *see also Mission Broad. Corp. v. FCC,* 113 F.3d 254, 260 (D.C.Cir. 1997) (noting that applicant must first determine how much money is required). Second, she had "[t]o establish the availability of funds to meet these estimated expenses, [by] provid[ing] substantial and reliable evidence showing 'sufficient net liquid assets on hand, or committed sources of funds to construct and operate for three months without revenue.'" *Northampton,* 4 F.C.C.R. 5517 ¶ 15 (quoting Form 301, 50 Rad. Reg.2d at 388); *see also CHM Broad.,* 24 F.3d at 1458. Here, Damsky's reliance on a vague "ballpark" cost estimate does not get her over the initial "serious and reasonable efforts" hurdle. *Cf. In re Victorson Group, Inc.,* 6 F.C.C.R. 1697 ¶¶ 18–19 (Rev. Bd.1991) (finding "general sense" of estimated costs insufficient for financial qualification purposes); *In re Sunbelt Ltd. Partnership,* 7 F.C.C.R. 4394 ¶¶ 7–10 (Rev. Bd.1992) (finding "bits of information" on costs insufficient for financial qualification purposes), *aff'd,* 8 F.C.C.R. 753 (1993), *rev'd and remanded on other grounds sub nom. Sunbelt v. FCC,* Nos. 93–1184 & 93–1708, 1994 WL 191656 (D.C.Cir. May 9, 1994).

Damsky incorrectly relies on *Northampton* as support for her position. In *Northampton,* the Commission found financially qualified an applicant—a three-person corporation including a principal with experience in radio—that had relied on an oral cost estimate which included an itemization of equipment, construction, and salary and other operating costs necessary to cover a low-cost "mom and pop" operation ($38,-800). *See In re Northampton Media Associates,* 3 F.C.C.R. 570 ¶¶ 31, 51–56, 63, 68 (1988); *Northampton,* 4 F.C.C.R. 5517 ¶¶ 5, 17. The applicant had relied on a consulting engineer to prepare the technical portion of the application and to give advice regarding potential construction and operation costs. *See* 3 F.C.C.R. 570 ¶ 53. Here, unlike in *Northampton,* Dam-

sky, a person relatively unfamiliar with the radio industry, relied on a consultant's "ballpark" estimate indicating that the relevant costs would be around $300,000. While Damsky's figure came from an engineer, perhaps even an engineer with experience in radio station management, Damsky could not verify that the figure took into account basic and fundamental expenses. Given the potential magnitude of construction and operation costs at stake, the Commission reasonably concluded that Damsky did not have enough supporting detail at the time of her certification to make her reliance on the $300,000 figure reasonable. The evidence offered by Damsky did not establish that she had made "serious and reasonable efforts" to secure a cost figure *at the time of certification.* Thus, the Commission legitimately rejected Damsky's application due to her lackadaisical cost inquiry efforts.

## C. The Auction

█ In reviewing the interpretation and application of the FCC auction rules challenged here, we afford the deference due the FCC's interpretation of its own rules and policies, and will uphold the FCC's interpretation unless it is "plainly erroneous or inconsistent with the regulation." *E.g., Freeman Eng'g,* 103 F.3d at 178 (citations and quotations omitted). Considering the ambiguity surrounding the interaction between the § 309(*l*) auction and settlement provisions as described by the Commission in the *Auction Order,* we conclude that the Commission adequately explained why it did not regard paragraph 89 of the *Auction Order* as requiring that Damsky be allowed to participate in an auction for the construction permit.

█ In addition to giving the Commission the ability to resolve transitional competing comparative permit applications though a competitive auction mechanism, Congress required the Commission to "waive any provisions of its regulations necessary to permit such persons to enter an agreement to procure the removal of a conflict between their applications" during a 180-day window. 47 U.S.C. § 309(*l*). Here, two applicants, not including Damsky, filed a settlement agreement within the 180–day period. The agreement was contingent upon the Commission's affirming the ALJ's finding that Damsky was disqualified on financial qualification grounds. Since the auction issue involves, in part, the Commission's interpretation of a statute committed to its administration, we employ the *Chevron* analysis in reviewing the agency's interpretation. Pursuant to *Chevron,* we will give effect to any unambiguously expressed intent of Congress as contained in the statutory provision under review. *See Nuclear Info. Resource Serv. v. Nuclear Regulatory Comm'n,* 969 F.2d 1169, 1173 (D.C.Cir. 1992) (en banc). However, if the statutory provision is silent or ambiguous, we will defer to the agency's interpretation assuming its interpretation is reasonable and consistent with the statute's purpose. *See id.* Given the statutory language in issue, we hold that the Commission reasonably interpreted § 309(*l*) as affording applicants falling in the window period, upon the resolution of any basic qualification disputes, the opportunity to settle instead of participating in an auction. *See Further Petition for Reconsideration,* 14 F.C.C.R. 370 ¶¶ 11–12; *In re Implementation of Section 309(j) of the Communications Act,* 14 F.C.C.R. 8724 ¶ 18. The Commission's use of Damsky's financial qualification as a condition to approving the settlement agreement is consistent with the statute. *See also* 47 U.S.C. § 309(j)(6)(E) (1994) (indicating that the grant of auction authority not "be construed to relieve the Commission of the obligation in the public interest to continue to use ... threshold qualifications ... in order to avoid mutual exclusivity in application and licensing proceedings").

In reaching our decision, we reject Damsky's contention that § 309(*l*)(3) only governs global settlements. The Commis-

sion reasonably interpreted the statute when it determined that partial settlements could be approved under § 309(*l*)(3). *See Auction Order*, 13 F.C.C.R. 15920 ¶¶ 73, 93; *In re Implementation of Section 309(j) of the Communications Act*, 14 F.C.C.R. 8724 ¶ 18. Nothing in the statute dictates that § 309(*l*)(3) only permits universal settlement. Since settlements are private contractual arrangements, an applicant such as Damsky has no general legal right to be included in a settlement. *See In re Anax Broad. Inc.*, 88 F.C.C.2d 607 ¶ 10 (1981). Thus, nothing in the statute or other law appears to preclude the Commission from approving a settlement that includes only *qualified* parties. The Commission has acted consistent with this interpretation. *See In re Global Information Tech., Inc.*, 12 F.C.C.R. 11808 ¶¶ 1, 3, 6 (1997), *aff'd on other grounds sub nom. Frontier Broad., Inc. v. FCC*, No. 97–1530, 1998 WL 704510 (D.C.Cir. Sept.4, 1998); *In re Gonzales Broad., Inc.*, 12 F.C.C.R. 12253 ¶¶ 4, 19 (1997), *aff'd on other grounds sub nom. Jelks v. FCC*, 146 F.3d 878 (D.C.Cir.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 1045, 143 L.Ed.2d 52 (1999); *In re Pensacola Radio Partners*, 13 F.C.C.R. 11681 ¶ 1 (1998), *aff'd on other grounds sub nom. Floyd v. FCC*, No. 98–1269, 1999 WL 236879 (D.C.Cir. Mar.29, 1999).

The Commission's interpretation of paragraph 89 of the *Auction Order* comports with its interpretation of the statute and its prior practice. The Commission reasonably interprets paragraph 89 as only applying to cases "where an auction would otherwise be held because no settlements were reached." *Memorandum Opinion and Order*, 14 F.C.C.R. 370 ¶ 12. As the Commission points out, the *Auction Order* and supporting notices separate out § 309(*l*)(3) settlement from auction rules and guidelines. *See id.* ¶ 13. Moreover, the Commission adequately established on the record that a proper § 309(*l*)(3) settlement would obviate the need for an auction. *See id.*; *In re Implementation of Section 309(j) of the Communications Act*,

14 F.C.C.R. 8724 ¶ 18. The Commission's reading of paragraph 89 makes sense when the provision is analyzed in context. Thus, paragraph 89 does not undo the Commission's approval of the settlement agreement in this case since the Commission reasonably interpreted paragraph 89 as not pertaining to permissible settlement agreements reached pursuant to § 309(*l*)(3).

To recap, we hold that Damsky provided sufficient notice to entitle her to review of her claims stemming from the *Memorandum Opinion and Order* in addition to review of the auction issue. However, we uphold the Commission's determination that Damsky was financially disqualified from receiving the Homewood FM station construction permit. We also hold that the Commission reasonably interpreted § 309(*l*) and its *Auction Order* as not providing Damsky with the opportunity to participate in an auction.

## III. Conclusion

We conclude that the Commission did not err in finding Damsky financially disqualified from receiving a construction permit and in interpreting the auction provisions as being inapplicable to her. Thus, the Commission correctly dismissed Damsky's application. Since Damsky has no claim to the construction permit, we need not reach her challenge concerning the alleged misrepresentations made by HPI. Because the law and record support the Commission's findings regarding Damsky's financial qualifications and the Commission's interpretation and application of the relevant settlement and auction provisions are reasonable, we affirm the Commission's determinations challenged on appeal.