**Herbert L. SCHOENBOHM, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

No. 98–1516.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1999.

Decided Feb. 29, 2000.

Rehearing En Banc Denied May 2, 2000.

---

Lauren A. Colby argued the cause and filed the briefs for appellant.

James M. Carr, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were Christopher J. Wright, General Counsel, and Daniel M. Armstrong, Associate General Counsel. Pamela L. Smith, Counsel, entered an appearance.

Before: SENTELLE, HENDERSON, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Appellant Herbert Schoenbohm operates an amateur radio station in the U.S. Virgin Islands. In 1992, he was convicted of a felony for fraudulently using counterfeit access codes to obtain long distance

telephone services.[1] In 1994, shortly before Schoenbohm's amateur radio licenses were due to expire, he filed a renewal application with the Federal Communications Commission (FCC).

After a series of hearings, an administrative law judge (ALJ) denied Schoenbohm's application. On June 29, 1998, the Commission affirmed the denial, finding that Schoenbohm's fraud conviction, "in combination with" his misrepresentations and lack of candor during the renewal proceedings, justified nonrenewal. *Herbert L. Schoenbohm,* 13 F.C.C.R. 15,028, 15,028 (1998) [hereinafter *Decision*]. Schoenbohm filed a petition for reconsideration, reiterating arguments he had previously made and asking for the first time that the FCC investigate allegations that some of his detractors may have had improper ex parte contacts with the ALJ. *See* J.A. at 77. The FCC denied reconsideration, restating its previous justifications for nonrenewal and rejecting the request for an inquiry into the ex parte allegations. *See Herbert L. Schoenbohm,* 13 F.C.C.R. 23,774, 23,777 (1998) [hereinafter *Reconsideration Order*].

Schoenbohm contends that the denials of both his renewal application and his petition for reconsideration were arbitrary and capricious agency actions, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). We affirm the FCC's refusal to renew Schoenbohm's radio licenses and conclude that we are without jurisdiction to review the rejection of his petition for reconsideration.

## I

■ We begin with the FCC's denial of Schoenbohm's renewal application. Before reaching the merits of that decision, how-ever, we must resolve a preliminary question of jurisdiction. The Commission argues that Schoenbohm did not appeal from its original decision to deny his renewal application, but only from its order denying his petition to reconsider that decision. Denial of a petition for reconsideration, the agency correctly notes, is generally nonreviewable unless the request for reconsideration was based on new evidence or changed circumstances. *See ICC v. Brotherhood of Locomotive Eng'rs,* 482 U.S. 270, 279–80, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987); *Southwestern Bell Tel. Co. v. FCC,* 180 F.3d 307, 311 (D.C.Cir.1999); *see also Entravision Holdings, LLC v. FCC,* 202 F.3d 311, 312 n.* (D.C.Cir.2000) (holding that nonreviewability in this context means lack of jurisdiction).

■ It is true that the notice of appeal Schoenbohm filed in this court characterizes his appeal as being from the order denying the petition for reconsideration. *See* J.A. at 85. It is also true that in *Southwestern Bell,* where the petition for review designated only the reconsideration order, we held both that the reconsideration order was nonreviewable and that the underlying order was not properly before us. *See Southwestern Bell,* 180 F.3d at 313–14. We did not, however, suggest that the failure to designate an order in a petition for review (or notice of appeal) is always fatal. To the contrary, "we said in *Southwestern Bell Telephone Co. v. FCC* [that] a party may demonstrate its intention to appeal from one order despite referring only to a different order in its petition for review if the petitioner's intent 'can be fairly inferred' from the petition or documents filed more or less contemporaneously with it." *Martin v. FERC,* 199 F.3d 1370, 1372 (D.C.Cir.2000) (quoting *Southwestern Bell,* 180 F.3d at 313 (quot-

---

1. Schoenbohm was found guilty of violating 18 U.S.C. § 1029(a)(1), which provides that anyone who "knowingly and with intent to defraud produces, uses, or traffics in one or more counterfeit access devices" commits a felony. The statute defines "access device" as "any card, plate, code, account number, ... or other means of account access that can be used ... to obtain money, goods, services, or any other thing of value." *Id.* § 1029(e)(1). An access device is "counterfeit" if it is "counterfeit, fictitious, altered, or forged." *Id.* § 1029(e)(2).

ing *Brookens v. White,* 795 F.2d 178, 180 (D.C.Cir.1986))).

Here, Schoenbohm's intent to appeal from the underlying decision (as well as from the denial of reconsideration) is fairly inferable from the "concise statement of reasons," required by 47 U.S.C. § 402(c), that he filed together with his notice of appeal. That statement expressly lists each of his challenges to the underlying decision, including arguments that the FCC erred in relying on his criminal conviction and in finding that he lacked candor in his testimony before the agency. It also separately challenges the agency's refusal to investigate his allegations of improper ex parte contacts with the ALJ. *See* J.A. at 85–86. Schoenbohm's ancillary filing therefore makes this case like *Damsky v. FCC,* in which we recently inferred an appellant's intent to appeal an underlying decision from the fact that her concise statement of reasons challenged the substantive merits of that decision. *See* 199 F.3d 527, 533 (D.C.Cir.2000); *see also Martin,* 199 F.3d at 1373 (holding that petitioner's intent to seek review of underlying order was fairly inferable from his contemporaneously filed motion for stay). At the same time, it makes this case unlike *Southwestern Bell,* where there was no such challenge in any filing "prior to the brief filed in this court." *Southwestern Bell,* 180 F.3d at 313.

Because Schoenbohm's intent to appeal the FCC's underlying decision can reasonably be inferred from his concise statement of reasons, and because for the same reason the FCC "cannot claim that any notice defects surprised or misled it with regard to the issues [appellant] intended to raise on appeal," we conclude that we have jurisdiction to review the FCC's decision to deny renewal of Schoenbohm's amateur radio licenses. *Damsky,* 199 F.3d at 533.

## II

We review the merits of the FCC's decision only to determine whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). We review the factual findings upon which the decision was based to ensure that they were supported by "substantial evidence," *id.* § 706(2)(E). *See* 47 U.S.C. § 402(g); *Damsky,* 199 F.3d at 533. "Substantial evidence," in turn, is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Because this standard is "something less than the weight of the evidence, ... the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.*

In the following sections, we apply these principles to each of Schoenbohm's challenges to the FCC's refusal to renew his radio licenses.

## A

Schoenbohm's first contention is that it was arbitrary and capricious for the FCC to deny renewal based on his criminal conviction. In 1990, the Commission modified its "character" policy to provide that "evidence of any conviction for misconduct constituting a felony will be relevant to our evaluation of an applicant's or licensee's character." *Policy Regarding Character Qualifications in Broadcast Licensing,* 5 F.C.C.R. 3252, 3252 (1990) (footnote omitted) [hereinafter *Character Policy*]. Such evidence is relevant, the FCC said, because it aids the Commission in ascertaining whether a licensee will "deal truthfully with the Commission and ... comply with [its] rules and policies." *Id.* (quoting 102 F.C.C.2d 1179, 1190–91 (1986)). Rather than establish a " 'hierarchy' of felonies that might arise in individual cases," the

Commission examines the impact of a conviction on a case-by-case basis. *Id.*

■ There is nothing unreasonable about the FCC's conclusion that Schoenbohm's felony conviction was relevant to his license renewal. A conviction for fraudulent conduct plainly calls into question a licensee's ability to act in a manner consonant with FCC regulations. As the Commission observed, fraud "is a subject area the Commission has traditionally considered to be pertinent to its evaluation of a licensee's character." *Decision*, 13 F.C.C.R. at 15,038. Schoenbohm argues, however, that the Commission acted arbitrarily in judging his conviction not just relevant, but sufficient to justify denial, since in other cases it has renewed a license or granted a permit despite an applicant's felony conviction when the applicant showed evidence of rehabilitation. *See, e.g., Richard Richards*, 10 F.C.C.R. 3950 (Rev. Bd.1995); *In re Alessandro Broad. Co.*, 99 F.C.C.2d 1 (1984). According to appellant, he too established his rehabilitation.

The FCC's policy does acknowledge rehabilitation as a mitigating factor in assessing an applicant's character. *See Character Policy*, 5 F.C.C.R. at 3252 & n. 4. Here, however, the FCC found that Schoenbohm demonstrated an absence of rehabilitation by making deliberate misrepresentations and displaying a lack of candor during the renewal proceedings. *See Decision*, 13 F.C.C.R. at 15,038. Moreover, because these occurred in the course of the agency's own proceedings, they were a rationale for nonrenewal that went beyond the felony conviction alone. *See id.* Commission regulations forbid applicants from "mak[ing] any misrepresentation or willful material omission bearing on any matter. . . ." 47 C.F.R. § 1.17; *see also* 47 U.S.C. § 312(a)(1). A licensee's complete candor is important to the FCC because "effective regulation is premised upon the agency's ability to depend upon the representations made to it by its licensees." *Leflore Broad. Co. v. FCC*, 636

F.2d 454, 461 (D.C.Cir.1980); *see also Character Policy*, 5 F.C.C.R. at 3253. Accordingly, it is well recognized that the Commission may disqualify an applicant who deliberately makes misrepresentations or lacks candor in dealing with the agency. *See Swan Creek Communications, Inc. v. FCC*, 39 F.3d 1217, 1221–24 (D.C.Cir.1994); *Garden State Broad. Ltd. v. FCC*, 996 F.2d 386, 393–94 (D.C.Cir. 1993). The FCC's findings with respect to Schoenbohm's misrepresentations and lack of candor are therefore more than sufficient to distinguish this case from the precedents he cites.

### B

■ Schoenbohm does not dispute that if he had made misrepresentations to the Commission, that fact, together with his fraud conviction, would have justified nonrenewal. Instead, he disputes that he made any misrepresentations. The FCC found to the contrary in connection with two aspects of his presentations to the Commission.

First, the Commission determined that Schoenbohm made misrepresentations and lacked candor in testifying about the nature of his prior felony. As the Third Circuit noted in affirming his conviction, Schoenbohm was found guilty of violating 18 U.S.C. § 1029(a)(1) because he "*used a counterfeit access device.*" *United States v. Schoenbohm*, No. 93–7516, 31 F.3d 1175, slip op. at 3 (3d Cir. Apr. 18, 1994) (emphasis added). Schoenbohm effectively conceded this in his first written submission to the Commission, stating that he was "convicted for defrauding a telephone resale service provider by . . . making unauthorized long distance calls." Schoenbohm Aff. at 1 (Aug. 8, 1995) (J.A. at 160). In subsequent presentations, however, Schoenbohm described his conviction differently. In a July 18, 1995 affidavit he said:

> I did not steal any money or cause the account of any subscriber to be debited. *I was convicted solely of having knowl-*

*edge in my mind* of certain telephone codes of which 4 of the 6 digits were said to be similar to those that could be used to make long distance calls without paying for them.

Schoenbohm Aff. at 2 (J.A. at 185) (emphasis added). And in oral testimony before the Commission, he characterized his conviction as based on his possession of "numbers in my mind," rather than on the performance of any unlawful act. *Decision*, 13 F.C.C.R. at 15,031 (quoting Tr. at 38).

On the basis of this evidence, the FCC found that Schoenbohm had intentionally portrayed his crime in a misleading manner in order to minimize its significance. Schoenbohm maintains that he was not attempting to mislead, but rather was simply trying to explain that his crime involved numeric codes rather than mechanical devices. Although that is not an impossible reading of his testimony, it was certainly reasonable for the FCC to reach a contrary conclusion.

The FCC also found that Schoenbohm misrepresented the facts and lacked candor in connection with an inquiry the ALJ made into whether he had attempted to violate the agency's ex parte rules—by urging others to ask the Virgin Islands' congressional delegate to intervene with the FCC on his behalf.[2] The ex parte rules prohibit a party in specified proceedings (including the proceedings at issue here) from making written presentations to the Commission without serving them on the other parties, and from making oral presentations without notice and an opportunity for the others to be present. *See* 47 C.F.R. §§ 1.1202, 1.1208. They also provide that "[n]o person shall solicit or encourage others to make any presentation which he or she is prohibited from making...." *Id.* § 1.1210.

In a radio conversation with another amateur operator, Schoenbohm was tape recorded as saying:

> I'm not allowed under ex-parte rules to ask for assistance of ... people in political positions but other people if they feel that government is overbearing or I'm being treated unfairly, have every right to point this out to their elected representatives.

J.A. at 175. He also told the other operator:

> I'm not permitted at this time because of ex-parte rules to make any requests of political intervention. Other people could do it if they are so disposed but I can't do it. Go ahead.

*Id.* Schoenbohm then spelled out the congressional delegate's name, and provided an address and telephone number at which he could be reached. *Id.*

When asked to explain this conversation, Schoenbohm told the ALJ that he intended only to share his newly acquired knowledge regarding the ex parte rules, and that he did not intend to encourage an ex parte solicitation on his behalf. *See In re Herbert L. Schoenbohm*, 11 F.C.C.R. 1146, 1148–49 (1996) (initial decision of ALJ). Later, he submitted an affidavit reiterating that he was simply "expounding on [his] newly discovered knowledge of the ex parte rules," and was not asking anyone to make a contact. Schoenbohm Aff. ¶ 8 (Feb.1997) (J.A. at 191). Once again, although it is not impossible that Schoenbohm intended to do no more than declare his understanding of the law, the record provides substantial evidence to support the FCC's finding that this explanation was less than candid, and that he was in fact trying to solicit others to make ex parte submissions on his behalf.

■ Schoenbohm further contends that because there is no evidence that any ex parte contacts actually occurred, he "is

---

**2.** This inquiry is distinct from the inquiry Schoenbohm himself requested, which would have investigated whether opponents of his application had engaged in ex parte communications with the ALJ. *See* discussion *infra* Part III.

being punished simply for uttering words to a friend in the course of a private amateur radio conversation." Schoenbohm Br. at 13–14. This, he argues, violates the First Amendment. He is wrong for two reasons. First, the agency's ex parte rules do not interfere with Schoenbohm's right to discuss the proceedings with others; they merely require that communications with the agency be on the record. As the FCC correctly concluded, "rules intended to protect the integrity of the administrative process by requiring that presentations to the agency be made on the record and that solicitations of such presentations be limited to requests for on-the-record presentations d[o] not violate the First Amendment." *Reconsideration Order,* 13 F.C.C.R. at 23,775; *see California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (stating that although the First Amendment protects the right of access to agencies and courts, it does not immunize from proscription "practice[s] which may corrupt the administrative or judicial processes"); *cf. National Soc'y of Prof'l Eng'rs v. United States,* 435 U.S. 679, 697, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978) (noting that although "an injunction against price fixing abridges the freedom of businessmen to talk to one another about prices," the First Amendment does not make it impossible to enforce the antitrust laws).

■ Moreover, and more fundamentally, the FCC did not deny Schoenbohm's renewal application because he violated, or attempted to violate, the ex parte rules. Nor did it do so because of what he said to his fellow radio operator. Rather, the FCC denied the application because Schoenbohm made misleading statements to the agency itself, and it is well established that the First Amendment does not protect misrepresentations made in administrative adjudications. *See California Motor Transp.,* 404 U.S. at 512–13, 92 S.Ct. 609.

For the foregoing reasons, we conclude there was substantial evidence to support the FCC's findings that Schoenbohm made misrepresentations and lacked candor in his testimony regarding both his felony conviction and his efforts to induce ex parte communications with the Commission. We further conclude that the FCC acted reasonably in deciding that Schoenbohm's "lack of candor and misrepresentation along with the felony conviction together" justified nonrenewal of his licenses. *Decision,* 13 F.C.C.R. at 15,038.

### III

Following the FCC's original decision denying his license renewal on June 29, 1998, Schoenbohm petitioned the agency for reconsideration. In addition to restating his previous arguments, he asked for the first time that the Commission investigate whether amateur operators who disliked him had themselves communicated with the ALJ ex parte, seeking to have his application denied. In support of this request, Schoenbohm stated that on January 17, 1998 he had made a tape recording of a conversation between two amateur operators which, he asserted, indicated that his detractors were making calls to the ALJ. *See* Pet. for Recons. ¶¶ 5, 6 (J.A. at 77).

The FCC rejected Schoenbohm's request for an inquiry on two grounds. First, the agency held it untimely because it was based neither on changed circumstances nor on newly discovered facts. As the FCC noted, Schoenbohm's request relied on a conversation he had taped more than six months before the Commission's decision on his renewal application. *See Reconsideration Order,* 13 F.C.C.R. at 23,-775. Second, the FCC rejected Schoenbohm's request on the ground that the tape-recorded conversation "d[id] not provide probative evidence that anyone contacted or attempted to contact [the ALJ], let alone that any such contact reached the Judge." *Id.* at 23,776. Schoenbohm's allegation, the FCC said, was based "solely on hearsay, speculation, and rumor." *Id.*

In *ICC v. Brotherhood of Locomotive Engineers (BLE)*, the Supreme Court held that an agency's denial of a petition for reconsideration is nonreviewable unless the petition was based on "new evidence or changed circumstances." 482 U.S. at 284, 107 S.Ct. 2360. Included within the ambit of nonreviewable decisions were those concerning matters that, even though "newly raised," were "previously available." *Id.* at 283, 107 S.Ct. 2360. The Court treated nonreviewability under such circumstances as jurisdictional, *see id.* at 287, 107 S.Ct. 2360, a point this circuit confirmed in *Entravision Holdings, LLC v. FCC*, 202 F.3d 311, 312 n.*.

■ Schoenbohm does not contend that his petition for reconsideration was based on "new evidence" in the sense of evidence not "previously available" to him. To the contrary, it is apparent on the face of the petition that the evidence upon which he relied—the tape recording of an amateur radio transmission—was previously available. As the FCC noted, the petition states that Schoenbohm made the recording on January 17, 1998—six months before the FCC rendered its original decision on his renewal application. Schoenbohm could have, and under FCC rules should have, submitted this evidence prior to that decision.[3] He failed to do so, and on appeal does not respond to the FCC's contention that this omission deprives us of jurisdiction. This is not a case, therefore,

in which nonreviewability means that "petitioner will have been deprived of all opportunity for judicial consideration ... of facts which, through no fault of his own, the original proceeding did not contain." *BLE*, 482 U.S. at 279, 107 S.Ct. 2360. Here, the fault is solely that of petitioner, and because his petition was not based on new evidence or changed circumstances, we are without jurisdiction to review its denial.[4]

## IV

The FCC's decision denying appellant's application for renewal of his amateur radio licenses is affirmed. Insofar as appellant also appeals from the FCC's refusal to reconsider that decision, we dismiss that appeal for lack of jurisdiction. *See BLE*, 482 U.S. at 284, 287, 107 S.Ct. 2360; *Entravision Holdings*, 202 F.3d at 312 n.*.

3. *See* 47 C.F.R. § 1.1214 ("Any party to a proceeding ... who has substantial reason to believe that any violation of [the ex parte rules] has been solicited, attempted, or committed shall promptly advise the Office of General Counsel in writing of all the facts and circumstances which are known to him or her."); *see also* 47 C.F.R. § 1.65(a) ("Each applicant is responsible for the continuing accuracy and completeness of information furnished in a pending application or in Commission proceedings involving a pending application.... Whenever there has been a substantial change as to any other matter which may be of decisional significance in a Commission proceeding involving the pending application, the applicant shall as promptly as possible ... submit a statement furnish-

ing such additional or corrected information as may be appropriate....").

4. In this case, little turns on whether we hold that the court lacks jurisdiction, or whether we consider the issue on the merits. Even if we were to consider the merits, *BLE* instructs that we must uphold an agency's decision to deny reconsideration unless there was the clearest abuse of discretion. *See* 482 U.S. at 278, 107 S.Ct. 2360; *see also Southwestern Bell*, 180 F.3d at 311; *Beehive Tel. Co. v. FCC*, 180 F.3d 314, 319–20 (D.C.Cir.1999). It would be difficult to find such an abuse in a case like this, where the agency's denial was based both on the unexcused untimeliness of the appellant's submission and on its lack of probative support.