# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 4, 2008        Decided April 18, 2008

No. 06-1377

CLARK COUNTY, NEVADA,
A POLITICAL SUBDIVISION OF THE STATE OF NEVADA,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION,
RESPONDENT

———

On Petition for Review of a Decision of the
Federal Aviation Administration

———

*Lori Potter* argued the cause for petitioner. On the briefs were *John E. Putnam*, *Peter J. Kirsch*, *Catherine M. van Heuven*, and *M. Brooke McKinley*. *Daniel S. Reimer* entered an appearance.

*Stephanie R. Marcus*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, and *Thomas M. Bondy*, Attorney. *Robert S. Greenspan*, Attorney, entered an appearance.

Before: GINSBURG, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge*
KAVANAUGH.

KAVANAUGH, *Circuit Judge*: For several years, Clark
County, Nevada, has been working with the Federal Aviation
Administration on plans for a new airport southwest of Las
Vegas. As that process unfolded, an alternative-energy
company notified the FAA that it wanted to build a wind farm
of 83 electricity-generating turbines on a mountain a few
miles from the planned airport site. The FAA concluded that
the 400-foot-tall turbines would not obstruct the airspace near
the airport site or pose a hazard by interfering with radar
systems at the new airport. Clark County disagrees with the
FAA's assessments and has petitioned for judicial review of
the FAA's determinations, arguing that the agency failed to
provide a reasoned explanation for purposes of the
Administrative Procedure Act. We agree with Clark County.
We therefore grant its petition for review, vacate the FAA's
determinations, and remand to the FAA for further
explanation.

I

Clark County, Nevada, includes Las Vegas and
surrounding communities and is one of the fastest-growing
areas in the United States. The county's population recently
topped 2 million residents – double its population in 1994 and
triple its population in 1981. The county has grown so rapidly
in large part because of Las Vegas's popularity as a vacation
destination. Perhaps attracted by the perception that what
happens in Vegas stays in Vegas, more than 39 million people
visited the city in 2007.

The population and tourism booms are straining Clark
County's infrastructure, including McCarran International

Airport, the county's only commercial airport. McCarran served a record 47.7 million passengers in 2007 and is projected to exceed its capacity of 53 million passengers within the next few years.

In 2000, recognizing the need for additional airport capacity in the Las Vegas region, Congress passed and President Clinton signed the Ivanpah Valley Airport Public Lands Transfer Act. Pub L. No. 106-362, 114 Stat. 1404 (2000). This law authorized the sale of roughly 6,000 acres of federal land to Clark County for a new commercial airport 30 miles southwest of Las Vegas, near the Nevada-California border. Since the sale closed in 2004, Clark County has filed an airport layout plan with the FAA showing the proposed runway and radar-facility locations and the planned flight procedures. In cooperation with the county, the FAA and the federal Bureau of Land Management are preparing an environmental impact statement for the airport. *See* Notice of Intent to Prepare an Environmental Impact Statement for the Southern Nevada Supplemental Airport, 71 Fed. Reg. 52,367 (Sept. 5, 2006). The county predicts that the new airport will open by 2017.

As the county worked its way through the airport-planning process, an alternative-energy company proposed to build an electricity-generating wind farm on federal land atop Table Mountain, which overlooks the Ivanpah Valley and is about 10 miles from the airport site. The farm would include 83 wind turbines, 80 of which would reach almost 400 feet into the air.

Under federal regulations governing airspace, the company notified the FAA of the proposed wind-farm construction. *See* 14 C.F.R. § 77.13. The FAA initiated aeronautical studies to assess whether the turbines would

"result in an obstruction of the navigable airspace or an interference with air navigation facilities and equipment or the navigable airspace." 49 U.S.C. § 44718(b)(1); *see also* § 44718(b)(1)(C)-(D) (requiring FAA to study impact of proposed construction on "existing" and "planned" airports). The FAA conducted the aeronautical studies under its Part 77 regulations governing "objects affecting navigable airspace" and its procedural handbook for Part 77 studies. *See* Procedures for Handling Airspace Matters, FAA Order 7400.2F (Feb. 16, 2006) ("Handbook"). The FAA sought to determine whether any turbine would exceed the obstruction standards in Subpart C of its Part 77 regulations or whether any turbine would otherwise pose a hazard to air navigation. The FAA ultimately issued 83 "Does Not Exceed" determinations – one for each turbine. It concluded that each turbine "does not exceed [the Subpart C] obstruction standards, does not have substantial adverse physical or electromagnetic interference effect upon navigable airspace or air navigation facilities, and would not be a hazard to air navigation." Handbook ¶ 7-1-3(a); 14 C.F.R. § 77.19(c)(1) (aeronautical study results in determination that proposed construction "[w]ould not exceed any standard of subpart C and would not be a hazard to air navigation"); *see also, e.g.*, Determination of No Hazard to Air Navigation, No. 2006-AWP-2865-OE (Sept. 17, 2006), Joint Appendix ("J.A.") 97 (issuing "Does Not Exceed" determination for one of the turbines after an "aeronautical study revealed that the structure does not exceed obstruction standards and would not be a hazard to air navigation").

Clark County has petitioned for review of the FAA's "Does Not Exceed" determinations, which are reviewable orders under 49 U.S.C. § 46110(a). The county argues that the FAA's determinations violated the arbitrary-and-capricious standard of the Administrative Procedure Act. In

response, the FAA first contends that Clark County's petition is not justiciable because the county lacks standing and its petition is not ripe. If standing and ripeness requirements are satisfied, the FAA argues that its "Does Not Exceed" determinations are reasonable and reasonably explained.

## II

We first consider the FAA's contentions that Clark County lacks standing to challenge the determinations and that the county's petition is not ripe for review.

The "irreducible constitutional minimum of standing" requires a party to show injury in fact caused by the defendants' conduct and redressable by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002) (party whose "standing is not self-evident . . . must supplement the record to the extent necessary to explain and substantiate its entitlement to judicial review"). Clark County has sufficiently demonstrated injury in fact: It has submitted affidavits, which the FAA does not persuasively rebut, that the proposed wind turbines would pose a hazard to planes flying near its planned airport and that the turbines would interfere with radar units at the airport. *Cf. City of Dania Beach v. FAA*, 485 F.3d 1181, 1186-87 (D.C. Cir. 2007). For standing purposes, the FAA's determinations cause that injury because they allow construction of the wind turbines. Conversely, a hazard determination by the FAA would preclude construction. *See* CLARK COUNTY, NEV., CODE § 30.56.070(c); *see also Renal Physicians Ass'n v. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1275 (D.C. Cir. 2007) ("[S]tanding exists where the challenged government action authorized conduct that would otherwise have been illegal."); *BFI Waste Sys. of N. Am., Inc. v. FAA*, 293 F.3d

527, 531-32 (D.C. Cir. 2002). The injury is redressable under standing precedents because, on remand, the FAA could issue hazard determinations that would prevent construction of the turbines. *See Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 828-29 (D.C. Cir. 2000); *Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994); *see also Lujan*, 504 U.S. at 572 n.7 ("The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."). In sum, the FAA's standing argument is meritless – akin to arguing that homeowners have no standing to object to federal approval of a toxic dump or dam being built in their neighborhood. *See Lujan*, 504 U.S. at 572 n.7.

In addition to contesting Clark County's standing, the FAA argues that the county's petition is not ripe for review. We disagree. To be sure, the environmental impact statement for the airport is not yet complete, and the county may change the location of the radar units. And it is true that the FAA's "Does Not Exceed" determinations are subject to periodic review and renewal (and have in fact been renewed). But Clark County's challenge to the initial determinations is nonetheless fit for review at this time. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 463 (D.C. Cir. 2006). The initial "Does Not Exceed" determinations represent the FAA's only decision on the merits of whether the turbines exceed obstruction standards or otherwise pose a hazard to navigation. And as the FAA's counsel candidly acknowledged at oral argument, a later challenge to any of the FAA's renewal decisions likely could not include objections to the merits of the FAA's "Does Not Exceed" determinations. The FAA's now-is-too-early, later-is-too-late argument exposes the hole in its ripeness submission and demonstrates why this case is fit for judicial resolution.

The FAA also says that the turbines might never be built because the federal Bureau of Land Management has yet to approve the wind-farm project. That's true but irrelevant. The county's petition is still ripe because this is the only time the county may challenge the merits of the FAA's "Does Not Exceed" determinations, and the FAA could stop the wind-farm project entirely. *Cf. Khodara Envt'l, Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004) (Alito, J.) (allowing party to challenge one of two "independent" regulatory obstacles).

III

We proceed to the merits of Clark County's petition.

In Administrative Procedure Act parlance, the FAA did not conduct formal, on-the-record hearings; rather, its "Does Not Exceed" determinations were the product of *informal* adjudication. We review these informal adjudicatory determinations under the APA to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 653-56 (1990).

"'The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency.'" *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 753 (D.C. Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). We must uphold the FAA's determinations so long as the agency "engaged in reasoned decisionmaking and its decision is adequately explained and supported by the record." *N.Y. Cross Harbor R.R. v. STB*, 374 F.3d 1177, 1181 (D.C. Cir. 2004) (internal quotation marks omitted); *see also D&F Afonso Realty Trust v. Garvey*, 216 F.3d 1191, 1195 (D.C. Cir. 2000).

Here, each of the FAA's determinations stated that the FAA had performed an aeronautical study on a particular turbine demonstrating "that the structure does not exceed obstruction standards and would not be a hazard to air navigation." Determination of No Hazard to Air Navigation, No. 2006-AWP-2865-OE (Sept. 17, 2006), J.A. 97. Although such a brief explanation may suffice in typical informal agency adjudications, the FAA's failure to further explain its conclusions here is problematic because the only evidence in the record available to this Court actually supports the *opposite* conclusions – that the turbines both would exceed the FAA's obstruction standards and would interfere with radar systems at the new airport.

As to obstruction standards, the record evidence contains "40:1 Reports" prepared by the FAA. The agency does not dispute that the reports measure whether a proposed construction project would penetrate an imaginary 40:1 slope climbing out and up from the end of an airport runway. In some cases, as the FAA's procedural Handbook indicates, tall objects that penetrate the 40:1 slope exceed the Part 77 obstruction standards and pose a hazard to aircraft. *See* 14 C.F.R. § 77.23(a)(3); Handbook ¶ 6-3-9(e)(4) (requiring FAA to issue Notice of Presumed Hazard when structure penetrates 40:1 departure slope by more than 35 feet). The 40:1 Reports in the record here indicate that the wind turbines would significantly penetrate the 40:1 slope for runways at the Ivanpah airport (and at the nearby Henderson airport, which serves general-aviation traffic). The only contrary indications in the record are two statements by the FAA official who ultimately issued the "Does Not Exceed" determinations; he asserted that there "are no Part 77 penetrations – clear as a bell" and that there "are NO Part 77 penetrations within this project area." J.A. 27, 276. Those conclusory statements do not address the seemingly contrary findings in the 40:1

Reports. Nor do they offer any explanation for the FAA's ultimate conclusion that the turbines would not exceed its Part 77 obstruction standards. In short, the FAA's determinations do not satisfy the APA's reasoned decisionmaking requirement with respect to the agency's Part 77 obstruction standards.

The record evidence also suggests that the turbines would interfere with radar systems at the Ivanpah airport. Clark County submitted an aerospace consultant's study to the FAA; the study concluded that the turbines "may impact aviation safety." ASRC Aerospace Corp. Radar Impact Analysis, at 4 (Apr. 21, 2006), J.A. 5. Among other things, the study stated that the wind turbines "will likely show up on the display of air traffic control" radar at the Ivanpah airport. *Id.* at 3, J.A. 4. Because each wind turbine has a radar "signature approximately that of a jumbo jet," the wind farm "could likely appear as a fleet of jumbo jets" on the radar screen and confuse air traffic controllers. *Id.* In addition, the turbines could intermittently disappear from the screen and reappear a few seconds later – hampering "the ability of the air traffic controller to successfully control aircraft in the area." *Id.* Because of potential radar issues, two offices within the FAA raised concerns to the FAA's Obstruction Evaluation Service, which was the office conducting the aeronautical study. The Airway Facilities Division objected to the turbines due to "the proximity of proposed sites to proposed air traffic radar facilities" at the Ivanpah airport. J.A. 90. The Flight Procedures Office similarly stated that the turbines "could very possibly impact some air navigation facilities" for the Ivanpah airport, "such as RADAR or other" navigational aids. *Id.* In a subsequent e-mail to the Obstruction Evaluation Service, an employee in the Flight Procedures Office elaborated: "History has borne out the fact that wind turbines can impact RADAR and other"

navigational aids, and the wind turbine project needs "to be brought to the attention of" the FAA's Airports Division (which was in charge of the Ivanpah airport project) as well as Clark County. J.A. 23.

In an e-mail to a colleague at the FAA, the official who ultimately issued the "Does Not Exceed" determinations dismissed the radar study and the internal staff objections as "a whole lot of IFs, Might's and Maybe's." J.A. 27. He acknowledged that the FAA could have circulated the proposed determinations to interested parties – including Clark County – for comment, but he stated that notice and comment would have yielded only "a lot of responses citing the if's, might's and maybe's." *Id.* The official stated that he therefore was "inclined to let the whole project go," *id.*, notwithstanding the agency's statutory duty to consider the impact of proposed structures on "planned" airports. 49 U.S.C. § 44718(b)(1)(D).

In light of the record evidence and the lack of any coherent explanation countering the concerns about radar interference, the FAA's determinations do not satisfy the reasoned decisionmaking requirement for this reason as well.[1]

---

[1] Seeking to prop up the agency's determinations, the FAA's counsel capably offered several new justifications to this Court. But we find nothing in the agency's determinations that supports counsel's post hoc explanations. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency."); *PanAmSat Corp. v. FCC*, 198 F.3d 890, 897 (D.C. Cir. 1999) ("We do not ordinarily consider agency reasoning that appears nowhere in the [agency's] order.") (internal quotation marks omitted and alteration in original).

11

\* \* \*

In sum, the FAA failed to reasonably explain why the turbines would not exceed its Part 77 obstruction standards or cause hazardous interference with radar systems at the Ivanpah airport. We therefore grant Clark County's petition for review, vacate the 83 "Does Not Exceed" determinations, and remand to the FAA.[2]

*So ordered.*

---

[2] At oral argument, the FAA's counsel argued that it would be overly burdensome for the FAA to prepare a detailed explanation each time a "pre-decisional" 40:1 Report indicates that construction might exceed an obstruction standard but a "more detailed calculation" leads the agency to conclude otherwise. Oral Arg. Tr. at 29. But our narrow, fact-bound holding today will not require more explanation in most such cases. Instead, if the FAA performs a "more detailed calculation" that bears on its decision, the agency may simply include that calculation in the record. If the calculation in fact supports the agency's ultimate conclusion, no further explanation may be needed in many cases. But here, the only record evidence actually undermines the agency's ultimate conclusions.